IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN AUDIO VISUAL CO. d/b/a ABSOLUTE PRODUCTION SERVICES | ) ) ) | |
| Plaintiff, | ) ) | No. 07 C 4948 |
| v. | ) ) | |
| PAULA A. ROUILLARD and MARKETING GROUP WEST, | ) ) ) | JUDGE DAVID H. COAR |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, American Audio Visual Co. d/b/a Absolute Production Services, Co. ("Plaintiff" or "APS") brings this action against Paula A. Rouillard ("Defendant" or "Rouillard"), alleging Illinois state law claims of tortious interference with business expectancy (Count I), breach of contract (Count II), and breach of fiduciary duty (Count III). Presently before the Court are: (1) Plaintiff's motion for summary judgment on all three counts, and (2) Plaintiff's motion for summary judgment on Defendant's counterclaim. For the reasons stated below, Plaintiff's motion for summary on Counts I, II, and III is GRANTED as to liability, and Plaintiff's motion for summary judgment on Defendant's counterclaim is also GRANTED.

## FACTUAL BACKGROUND

Plaintiff APS is an Illinois corporation in the business of providing coordination and audio visual production services for major corporate events. Defendant Rouillard, whose primary residence is in Phoenix, Arizona, was a full-time employee of APS from April 2005 until December 22, 2006, when Rouillard left APS and began working for Marketing Group West.

At the beginning of her employment with APS, Rouillard signed a "Work-Made-For-Hire and Proprietary Information Agreement," which stated in relevant part:

> [T]he employee agrees that for a one-year period following employment termination (whether voluntary or involuntary and with or without cause,) he/she shall not solicit, divert or initiate any contact with (or attempt to solicit, divert or initiate any contact with) any consumer, client, independent contractor or employee of APS for any commercial or business reason whatsoever.

(Pl. Br., Dkt. 51-2, Ex. B.)

Ventana Medical Systems, Inc. ("Ventana") was a new customer of APS secured by Rouillard. In 2005, Ventana hired APS to provide audio visual services for its 2006 annual corporate meeting, held on January 16-18, 2006. APS paid Rouillard a commission for the sale of services to Ventana. While still working for APS, Rouillard began planning for Ventana's next annual corporate meeting scheduled for January 2007. Rouillard's planning began as early as August 2006 and continued through the end of her employment with APS in December 2006.

On December 21, 2006, Rouillard sent Jill Imwalle of Ventana e-mails from two separate accounts. One e-mail, sent from Rouillard's account at APS, discussed planning for the January conference. The other e-mail, which Rouillard sent from her new account at Marketing Group West, stated, "Here is my new e-mail. I am now working as an independent under Marketing Group West and Premier Event. This ensures that we will be able to meet or actually beat your budget needs." (Pl. Br., Dkt. 51-2., Ex. E.) The next day, December 22, 2006, Rouillard sent Ventana, through Jill Imwalle, an e-mail from her Marketing West Group Account instructing Ventana to ignore calls from APS. Ventana hired Rouillard's new employer, Marketing Group West, for its 2007 annual meeting.

APS initiated this action on August 31, 2007 and filed its first amended complaint, which contains five counts, on March 21, 2008. APS received a judgment against Defendant Marketing

Group West on its claims for tortious interference with contract (Count IV) and tortious interference with business expectancy (Count IV). The first three counts, brought against Rouillard, include tortious interference with business expectancy (Count I), breach of contract (Count II), and breach of fiduciary duty (Count III). Rouillard filed a counterclaim against APS seeking her unpaid salary, unpaid commission, and compensation for earned but unused vacation days. Rouillard neither answered APS's first amended complaint nor responded to APS's motions for summary judgment. Through these motions, which are currently before the Court, APS moves for summary judgment on the three counts brought against Rouillard and Rouillard's counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary

judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

**I.     Count I: Tortious Interference with Business Expectancy**

APS first moves for summary judgment on its claim against Rouillard for tortious interference with business expectancy. Under Illinois law, the elements of a claim for tortious interference with business expectancy are: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of this expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. App. Ct. 1996); *James v. Intercontinental Hotels Group, Res., Inc.*, No. 09-cv-781, 2010 WL 529444, at *3 (N.D. Ill. Feb. 10, 2010).

APS has offered uncontested evidence satisfying each of these elements. APS had a reasonable expectancy of a business relationship with Ventana involving APS's provision of audio visual services at Ventana's 2007 annual meeting. APS provided audio visual services at Ventana's 2006 annual meeting, and while employed by APS, Rouillard began planning for the 2007 annual meeting. Rouillard's preparation continued until the day she left APS, December 22, 2006, only weeks before Ventana's annual meeting in January. When Rouillard left APS, she immediately contacted Ventana by e-mail, informed Ventana that she was changing employers, and instructed Ventana to ignore APS's e-mails. Additionally, Rouillard offered better pricing to induce Ventana to contract for her services through her new employer,

Marketing Group West. As a result of Rouillard's inducement, Ventana hired Marketing Group West for its 2007 annual meeting, causing APS to lose this expected business. Because APS has produced uncontested evidence establishing each element of its claim for tortious interference with business expectancy, the Court grants APS summary judgment on this claim.

## II.     Count II: Breach of Contract

APS next moves for summary judgment on its breach of contract claim. To recover for a breach of contract under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of his contractual obligations; (3) the defendant's breach of the contract; and (4) resultant injury to the plaintiff. *Van Der Molen v. Washington Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (citing *Henderson-Smith & Assocs., Inc. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 34 (Ill. App. Ct. 2001)). The first element, the existence of a valid and enforceable contract, requires offer and acceptance, consideration, and definite and certain terms. *Van Der Molen*, 835 N.E.2d at 69.

Again, APS offers uncontested evidence satisfying each element of its breach of contract claim. Rouillard entered into an agreement with APS for employment. In consideration of such employment, she agreed to APS's terms. Specifically, Rouillard signed a "Work-Made-For-Hire and Proprietary Information" agreement that prohibited her from "soliciting, diverting or initiating any contract with (or attempt to solicit, divert or initiate any contact with) any customer, client, independent contract or employee of APS for any commercial or business reason whatsoever" during the year following the termination of her employment with APS. (Pl. Br., Dkt. 51-2, Ex. B.) APS fulfilled its obligations under its contract with Rouillard by employing her, paying her a salary, benefits, and commission. However, Rouillard breached her agreement with APS by soliciting Ventana, a customer of APS, to hire Marketing Group West.

As discussed above, it is undisputed that Rouillard contacted Ventana, and Ventana transferred its business from APS to Rouillard's new employer, Marketing Group West. APS was consequently injured by this loss of business. Because APS has satisfied each element of its breach of contract claim, the Court grants APS's motion for summary judgment on this claim.

**III.     Count III: Breach of Fiduciary Duty**

Next, APS moves for summary judgment on its claim against Rouillard for breach of fiduciary duty. To establish a claim for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary duty, that the fiduciary duty was breached, and that the breach proximately caused an injury to the plaintiff. *Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000). A fiduciary relationship exists between a principal and agent as a matter of law. *Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005). Although an employee's fiduciary duty to his employer typically ends upon the termination of his employment, "a restrictive covenant may create an ongoing fiduciary duty even after an employee leaves a company." *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *10 (N.D. Ill. Mar. 4, 2008); *see also Jostens, Inc. v. Kauffman*, 842 F.Supp. 352 (C.D. Ill. 1994) (citing, *inter alia*, *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) and permitting a post-employment fiduciary duty claim to stand). Here, it is undisputed that Rouillard signed a non-compete agreement, assuming a fiduciary duty to APS that extended beyond the term of her employment. She breached this duty when she induced Ventana to divert its business from APS to her new employer, Marketing Group West, and as a result, APS was injured by Rouillard's breach. Accordingly, the Court grants APS summary judgment on its claim for breach of fiduciary duty.

## IV. Defendant Rouillard's Counterclaim

APS filed a separate motion for summary judgment on Roulliard's counterclaim seeking damages for back pay, vacation pay, and sales commissions. On October 17, 2007, APS sent Rouillard a check for back pay and commissions. During her deposition, Rouillard testified that she received APS's check and that this check completely resolved her counterclaim. Based on the uncontroverted evidence that the parties settled the matters in Rouillard's counterclaim, the Court grants summary judgment for APS on this claim.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary on Counts I, II, and III is GRANTED as to liability, and Plaintiff's motion for summary judgment on Defendant's counterclaim is also GRANTED.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** March 9, 2010